IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>WESTERN DIVISION</u>

ROBERT S. STEWART, JR.,

        Petitioner,

v.

UNITED STATES OF AMERICA, et al.,

        Respondents.

CIVIL ACTION NO.
1:22-CV-00294-MHH-JHE

## <u>RESPONSE TO ORDER TO SHOW CAUSE AND MOTION TO DISMISS</u>

Respondent Sean Snider files this Response to the Court's Order to Show Cause (Doc. 8) and respectfully moves this Court to dismiss Petitioner Robert S. Stewart, Jr.'s Petition on the grounds that the Bureau of Prisons (BOP) has absolute discretion in calculating Stewart's credits under the First Step Act (FSA) and his credits have been calculated correctly. Further, Stewart has failed to exhaust administrative remedies for his claims. In support, Respondent states as follows:

### I.    PARTIES AND SUMMARY OF ALLEGATIONS

#### A. Petitioner Robert S. Stewart, Jr.

Stewart, Federal Register Number 28576-509, is a federal inmate currently on home confinement. *See* Ex. 1, Declaration of Kneyse G. Martin, Management

Analyst, Bureau of Prisons (BOP) Designation and Sentence Computation Center, dated April 29, 2022, ¶ 2 and Ex. 2, Attachment 1 to Declaration of Kneyse G. Martin at 1. Stewart was arrested by the United States Marshal Service (USMS) on February 3, 2021. Ex. 1, Martin Decl. ¶ 3. On February 22, 2021, Stewart was released from custody via a bond to pretrial supervision. *Id.* ¶ 4. On June 16, 2021, the United States District Court for the Eastern District of Virginia, sentenced Stewart to a 21-month term of imprisonment for False Statements, Wire Fraud, and Theft of Government Funds. *Id.* ¶ 5, and Ex. 3, Attachment 2 to Martin Decl. The Court ordered Stewart to voluntarily surrender to his designated facility as directed by BOP. *Id.* On July 28, 2021, Stewart voluntarily surrendered to Federal Correctional Institution (FCI) Talladega Satellite Camp to commence his federal sentence. *Id.* ¶ 6. His current projected First Step Act (FSA) release date is October 20, 2022. *Id.* ¶ 18, and Ex. 2, Attachment 1 to Martin Decl. Since February 2022, Stewart has been in the BOP's custody on home confinement.   *Id.*, and Ex. 6, Attachment 5 to Martin Decl.

### B.  Warden Sean Snider

Stewart names the United States in his habeas petition as the respondent. "The law is well established that the proper respondent in cases challenging physical custody is the petitioner's warden or immediate custodian." *Ukwu v. Holder*, No. 4:11-cv-04188-CLS, 2012 WL 1946826, at *2 (N.D. Ala. Apr. 26, 2012), *report and*

*recommendation adopted*, No. 4:11-cv-04188-CLS, 2012 WL 1952579 (N.D. Ala. May 24, 2012); *see also* 28 U.S.C. §§ 2242-2243. Since Sean Snider is currently the warden of FCI Talladega he is the proper respondent in this action and may be properly substituted.

## II.    JURISDICTION

Stewart filed his petition under 28 U.S.C. § 2241, which provides an avenue of relief for inmates who allege violations of federal law that make the place, condition, or duration of confinement illegal. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (stating that suits attacking the duration of physical confinement are within the core of habeas corpus), *overruled on other grounds by Heck v. Humphrey*, 512 U.S. 477, 482 (1994). Federal inmates may seek judicial review of any pre-sentence custody credit determination by the Federal Bureau of Prisons (the "Bureau") by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See United States v. Wilson*, 503 U.S. 329, 335 (1992).

## III.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the

elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (internal citation omitted)). Consideration of attachments to the pleadings is appropriate on 12(b)(6) review because Fed. R. Civ. P. 10(c) provides that "'A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes,' which necessarily includes Rule 12(b)(6) motions." *Id.* at 1352 n.7.[1] *Cf. United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) ("[A] district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not

---

[1] The wording of the Federal Rules of Civil Procedure has been changed since the Eleventh Circuit's ruling in *Thaeter*, although the substance of Rule 10(c) is not affected by the alteration. Rule 10(c) currently reads, in pertinent part, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

challenged.")

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context-specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the

claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## IV.   PETITION

Stewart has asked the Court to order BOP to apply 15 days of good conduct time credit for each 30 days of his confinement and for credit for the nine Evidence-based Recidivism Reduction (EBBR) courses he took. *See* Doc. 1, Doc. 6, and Doc. 7. He seeks an order granting him 201.5 days of credit towards his federal sentence. Doc. 1.

## V.   LEGAL ARGUMENT

### A.   Stewart's Petition Should Be Dismissed Because BOP Has Authority to Calculate His Sentence and His Sentence Has Been Properly Calculated.

#### 1.   BOP Has Authority to Calculate Inmate Sentences.

Even if Stewart had exhausted his administrative remedies, his petition should be dismissed because BOP properly calculated his sentence. The Attorney General, through BOP, administers inmate sentences. 18 U.S.C. § 3621(a). BOP has exclusive jurisdiction to determine sentence credits for inmates in the first instance. "After a district court sentences a federal offender, the Attorney General, though the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). BOP utilizes extensive policies in this administration. Although Stewart alleges that BOP improperly calculated his sentence, he does not establish that BOP failed to follow its policies.

A review of BOP records reveals that Stewart's sentence was properly calculated in accordance with Federal statutes and BOP policy. Stewart alleges that he is entitled to additional credit towards his federal sentence. He alleges that BOP has failed to apply 15 days of good conduct time credit for every 30 days he spent in confinement. He also seeks credit for nine EBRR courses he took. In total, he seeks 201.5 days of credit.

2.   Stewart's Sentence Properly Commenced on July 28, 2021.

According to 18 U.S.C. § 3585(a), as referenced in BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), a sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to the official detention facility at which the sentence is to be served. On July 28, 2021, Stewart voluntarily surrendered to FCI Talladega Satellite Camp to commence his federal sentence. Ex. 1, Martin Decl. ¶ 6 and Ex. 6, Attachment 5 to Martin Decl. Thus, BOP has properly calculated Stewart's federal sentence as commencing on July 28, 2021, the date he self-surrendered.

3.   Petitioner Received Prior Custody Credit For the Time He Spent in Custody from February 3, 2021 through February 22, 2021.

The application of prior custody credit toward a federal sentence is governed by 18 U.S.C. § 3585(b), which states:

(a) **Credit for prior custody.** – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added); Ex. 1, Martin Decl. ¶ 12, and Ex. 7, Attachment 6 to Martin Decl. The Supreme Court has noted that, in this statute, "Congress made clear that a defendant could not receive a double credit for his detention time." *United States v. Wilson*, 503 U.S. 329, 337 (1992); *see also Shepherd v. Warden, USP-Atlanta*, 683 F. App'x 854, 855 (11th Cir. 2017) (same). This precludes the application of prior custody credit for time spent serving another sentence. The time Stewart spent in custody from February 3, 2021, through February 22, 2021, was not credited towards any other sentence. Thus, he was granted 20 days of credit toward his federal sentence for this time period. Ex. 1, Martin Decl. ¶ 12 and Ex. 2, Attachment 1 to Martin Decl.

        4.    <u>Stewart Is Eligible to Receive up to 94 Days of Good Conduct Time.</u>

According to BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), BOP applies good conduct time (GCT) in accordance with 18 U.S.C. § 3624(b). BOP has interpreted this statute to apply GCT only for time served rather than the length of the sentence imposed. This interpretation has been upheld by the U.S. Supreme Court decision in *Barber, et al. v. Thomas, et al.*, 560

8

U.S. 474 (2010). BOP would previously award 54 days of GCT for each year served. Ex. 1, Martin Decl. ¶ 13, and Ex. 8, Attachment 7 to Martin Decl.

On December 21, 2018, the President signed into law the First Step Act of 2018 (FSA), Public Law 115-391. *See Schmutzler v. Quintana*, No. 5:19-046, 2019 WL 727794, at *1–*2 (E.D. Ky. Feb. 20, 2019). Prior to the enactment of the FSA, GCT credit was applied only for time actually served, rather than the length of the sentence imposed. However, the FSA amended Title 18 U.S.C. § 3624(b), to provide for the application of GCT credit "of up to 54 days for each year of the prisoner's sentence imposed by the court" which is a change to the prior law. Ex. 1, Martin Decl. ¶ 14, and Ex. 9, Attachment 8 to Martin Decl. The amendments to § 3624(b), took effect on July 19, 2019. The changes made to the GCT earnings were made retroactive, but applicable only to sentences not yet satisfied as of July 19, 2019; therefore, any sentence satisfied prior to the effective date of the FSA is not eligible to receive additional GCT credits. Exhibit 1, Martin Decl. ¶ 15, and Exhibit 10, Attachment 9 to Martin Decl. Petitioner is currently earning 54 days of GCT and projected to earn a total of 94 days of good conduct time credit, and has no disallowances. Ex. 1, Martin Decl. ¶ 16; Ex. 11, Attachment 10 to Martin Decl.; Ex. 12, Attachment 11 to Martin Decl.

     5.    <u>Stewart's FSA Time Credit Was Calculated Correctly by BOP.</u>

Among several other reforming provisions, the FSA provided an incentive for

inmate participation in evidence-based recidivism reduction programming, such as classes and productive activities. The FSA calls this incentive Earned Time Credits. To earn these credits, inmates must complete 30 days' worth of pre-approved, qualifying programming, defined as Evidence-Based Recidivism Reduction courses and Productive Activities, to earn 10 days of earned time credit. This earned time credit can either be applied to lengthen an inmate's pre-release custody, such as home confinement or half-way house placement, or be applied to early transfer to supervised release, *i.e.*, early satisfaction of the inmate's sentence. To further qualify, inmates must be classified with a Prisoner Assessment Tool Targeting Estimated Risk and Need (PATTERN) risk score of "low" or "minimum."

Under 18 U.S.C. § 3632, the United States Department of Justice (DOJ) was required to "publish[] the risk and needs assessment system on July 19, 2019." *Hand v. Barr*, No. 1:20-cv-348, 2021 WL 392445, at *2 (E.D. Cal. Feb. 4, 2021) (citing Press Release, U.S. Dep't of Justice, *Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System* (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and).

With respect to implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

> (1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred

to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter--

(A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

(B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

(C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

(2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--

(A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

(B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1)–(2); *see also Hand*, 2021 WL 392445, at *2.

Under 18 U.S.C. § 3621(h)(1), "all inmates in the BOP system received an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ('PATTERN') by January 15, 2020." *Hand*, 2021 WL 392445, at *3 (citing Press Release, U.S. Dep't of Justice,

*Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act). Those inmates who successfully "complete[ ] evidence-based recidivism reduction programming or productive activities . . . shall earn 10 days of time credits for every 30 days of successful participation.'" 18 U.S.C. § 3632(d)(4)(A). As the FSA provides, an inmate who is found "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* § 3632(d)(4)(A)(ii).

The FSA specifically states that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter." *Id.* § 3632(d)(4)(B). BOP's website states that "'FSA Time Credits (FTC) may only be earned for completion of assigned evidence-based recidivism reduction programs or productive activities authorized by BOP and successfully completed on or after January 15, 2020.'" Federal Bureau of Prisons, *First Step Act – Frequently Asked Questions*, https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits (last visited Apr. 13, 2021).

"The [First Step Act] provides that by January 15, 2020, BOP 'implement and complete the initial intake risk and needs assessment for each prisoner, begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination, and begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers.'" PATTERN at 5 (quoting 18 U.S.C. §§ 3621(h)(1)(A)–(B)). "'In order to carry out [18 U.S.C. § 3621(h)(1)], so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need,' BOP shall 'provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A).'" *Id.* (quoting 18 U.S.C. § 3621(h)(2)(A)). As a result, the FSA gives the Bureau "two years—until January 15, 2022 . . . to 'phase-in' the evidence-based recidivism reduction programs and productive activities for all prisoners." *Id.* (quoting 18 U.S.C. § 3621(h)(2)(A)).

On January 13, 2022, the Department of Justice announced that BOP had finalized the FSA time credit rule and transmitted it to the Federal Register for publication. Ex. 14, Declaration of Susan Giddings, Chief of the BOP Unit Management Section of the Correctional Programs Branch, dated April 29, 2022, at ¶ 7. The final rule was published on January 19, 2022. *Id.* This final rule explains

BOP procedures regarding implementation of the specific provisions, including those related to the earning and application of FSA time credits. *Id.* BOP has already begun implementing the FSA final rule and will continue to do so on a rolling basis. *Id.* ¶ 8. BOP has already begun applying FSA time credits. *Id.* As of January 31, 2022, thousands of inmates have already been released to community custody, with hundreds more expected to be released to community supervision within 30 days. *Id.* It is anticipated that in the months to come, thousands more will be eligible for release. *Id.*

On January 12, 2022, BOP established interim procedures to ensure timely implementation of the FSA final rule. *Id.* ¶ 9. Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement. *Id.* These interim procedures will remain in effect during this initial period and will continue pending the completion of an auto-calculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT). *Id.* During the initial period and beyond, BOP's focus and attention is on ensuring the accurate calculation and application of FSA time credits. *Id.* ¶ 10.

For purposes of FSA time credit calculations, BOP is in the process of creating and implementing an application to fully automate calculation so that the BOP Office of Research and Evaluation (ORE) will no longer have to manually calculate time

credits for each inmate. *Id.*  ¶ 11. BOP expects to "go live" with this application in the coming months. *Id.* In the meantime, BOP decided to set certain cutoff dates for manual FSA time credit calculation to ease the burden on staff. *Id.* ¶ 12. Once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system. *Id.*

Under the interim procedures, BOP is calculating credit based on the total number of days in the inmate's designated facility divided by 30 days (one-month average), and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels). *Id.* ¶ 13. BOP uses the date in which an inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, whichever is later, as the start date for calculation purposes. *Id.* ¶ 14. Batch data is available monthly and is extracted on the last Saturday of the last full week of the month. *Id.* Beginning on December 25, 2021, monthly data sets of inmates, who are within 24 months of their statutory release date were extracted and their FSA time credits were calculated. *Id.*

Due to his impending statutory release date, BOP grouped Stewart in the initial batch of calculations with a cutoff date of December 25, 2021. *Id.* ¶ 15. Originally, BOP incorrectly calculated Stewart's FSA credits to be 61 days. *See* Giddings Decl. ¶ 4, and Exhibit 15, Attachment 1 to Giddings Decl. However, BOP conducted a new calculation. *Id.* ¶ 4 and Exhibit 16, Attachment 2 to Giddings Decl.

The start date for Stewart's FSA calculations is July 28, 2021, the date he arrived at his designated institution. *Id.* ¶ 15. He remained at his designated institution, and in good standing between July 28, 2021, and December 25, 2021. *Id.* Thus, he had a total of 150 days of eligible time. *Id.* Using the interim procedures, the FSA calculation was performed as follows: 150 (Stewart's eligible days) ÷ by 30 days (one month average) x 15 (allowable credit for inmates like Stewart with Low or Minimum risk levels) = 75. *Id.*, and Exhibit 16, Attachment 2 to Giddings Decl. Accordingly, Stewart earned 75 days of FSA credit for the time he served from July 28, 2021, through December 25, 2021. *Id.* To date, ORE has not recalculated Stewart's FSA calculations to reflect credit for the past four months (January – April) despite his eligibility to earn them. *Id.* ¶ 16. Like many other similarly situated BOP inmates, Stewart's FSA time calculations are governed by the interim guidance. *Id.* At this time, BOP does not intend to recalculate FSA time credits for inmates that have already been reviewed, until implementation of the automated system. *Id.* As stated above, once the automated system is up and running Petitioner's FSA credits will be updated to include any additional FSA credit that he is entitled to, that have not already been included in this initial calculation. *Id.* BOP Office of Information Technology (OIT) is working diligently to implement the automated system. *Id.* ¶ 17. Although it is unclear when exactly the system will go live, OIT is in the final stages of software testing and could potentially go live within the next 90 days

16

barring any unforeseen circumstances. *Id.*

BOP does not calculate time credits based on future projected days. *Id.* ¶ 18. Credit is earned as it accumulates. *Id.* This is because an inmate does not earn time credit for days in custody if they refuse to participate in certain programs or are placed in the Special Housing Unit. *Id.* It is entirely possible Petitioner may not earn time credits in the future.

As shown above, the FSA rules and regulations are constantly evolving requiring the BOP to use its discretion in how and when to calculate FSA credits for all BOP inmates including Stewart. BOP has calculated Stewart's FSA credits and awarded him 94 days of good conduct time and 75 FSA days for the time he served from July 28, 2021 through December 25, 2021. Once the new system "goes live", Stewart, just like every other inmate who was in the batch with a cutoff date of December 25, 2021, will have their FSA credits updated automatically and be awarded any credits for the time period after December 25, 2021. Accordingly, BOP has correctly calculated his sentence and his Petition should be dismissed.

**B. Respondent Is Entitled to Dismissal Because Stewart Failed to Exhaust His Administrative Remedies.**

In addition to the legal impediments outlined above, Stewart's Petition should be dismissed because he failed to properly exhaust the available administrative remedies. Generally, a federal prisoner must exhaust his administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. *See Santiago-*

*Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) ("'We agree with the reasoning of our sister circuits and hold that prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements.'" (quoting *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004))). While *Santiago-Lugo* altered Eleventh Circuit law to the effect that it "is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding," as the Court also held, "that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Id.* at 474–75; *see also Krist v. Eichenlaub*, 386 F. App'x 920, 923 (11th Cir. 2010) (only after a prisoner exhausts his BOP administrative remedies may he file for habeas relief in district court) (citing *United States v. Herrera*, 931 F.2d 761, 764 (11th Cir. 1991)); *Sudduth v. Warden*, No. 7:20-cv-01058-LSC-JHE, 2021 WL 1232692, at *1 (N.D. Ala. Mar. 4, 2021).

A petitioner who has failed to exhaust administrative remedies will find his petition dismissed on those grounds. *See, e.g.*, *Wells v. Rathman*, No. 1:12-cv-2400-AKK-TMP, 2014 WL 6455142, at *4 (N.D. Ala. Nov. 13, 2014) (dismissing § 2241 petition for failure to exhaust administrative remedies). Moreover, a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

Exceptions to this exhaustion requirement apply only in "'extraordinary circumstances'" and the petitioner "'bears the burden of demonstrating the futility of administrative review.'" *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)).

"In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules." *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016) (citing *Woodford*, 548 U.S. at 90–91). BOP has a four-step process for resolving complaints by prisoners. 28 C.F.R. § 542.10 *et seq.* Initially, a prisoner must attempt to informally resolve the complaint with staff. *Id.* § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the warden. *Id.* § 542.14. If the prisoner is unsatisfied with the warden's response, he may appeal to the Regional Director. *Id.* § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel within 30 days of the Regional Director's response. *Id.*

Here, Stewart did not exhaust *any* available administrative remedy requests before seeking relief under 28 U.S.C. § 2241. *See* Ex. 1, Martin Decl. ¶ 10, and Ex. 4, Attachment 3 to Martin Decl. Specifically, Stewart has never filed an administrative-remedy request with the Bureau since he's been incarcerated. *Id.*

Petitioner's email questioning his credit does not suffice to start the administrative remedy process. His claims that he is unable to access the administrative remedy process is not true. Stewart is on home confinement and is still being supervised by the BOP, so he has access to BOP staff. Further, he could also mail the administrative remedy form to BOP. He simply has not started, much less completed, the administrative remedy process. Accordingly, because "proper exhaustion of administrative remedies is necessary," *see Woodford*, 548 U.S. at 84, Stewart's Petition should be dismissed.

The Eleventh Circuit has long required federal prisoners to exhaust all available administrative remedies before seeking habeas corpus relief. *See Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004), *abrogated in part by Santiago-Lugo*, 785 F.3d at 474–75 (11th Cir. 2015) ("[P]risoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements."). While exhaustion of administrative remedies in the habeas setting is no longer a jurisdictional prerequisite to filing suit, "[t]he exhaustion requirement is still a requirement; it's just not a jurisdictional one." *Santiago-Lugo*, 785 F.3d at 475. Because Stewart did not exhaust his administrative remedies, he is not eligible for habeas corpus relief.

## VI.   CONCLUSION

Respondent is entitled to dismissal because Stewart's sentence was correctly

calculated by BOP who has the authority to calculate inmate sentences. Additionally,

Stewart has not exhausted his administrative remedies. Any relief Stewart requests

should therefore be denied and the Petition should be dismissed.

> Respectfully submitted,
>
> PRIM F. ESCALONA
> UNITED STATES ATTORNEY
>
> */s/Margaret Lester Marshall*
> MARGARET LESTER MARSHALL
> Assistant United States Attorney
> United States Attorney's Office
> Northern District of Alabama
> 1801 Fourth Avenue North
> Birmingham, Alabama 35203
> 205-244-2001

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2022, a copy of the foregoing has been

filed by electronic mail (CM/ECF) and will be served upon the Petitioner, by

mailing within a copy of the same by first class United States mail, postage

prepaid, addressed as follows:

> Robert S. Stewart, Jr.,
> #28579-509
> 412 Goodwin Circle
> Anniston, AL 36207

> *Margaret Lester Marshall*
> Margaret Lester Marshall
> Assistant United States Attorney