FILED

2022 Apr-29  PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

Robert S. Stewart, Jr.,                          :

Reg. No.                                     :

          Petitioner,                :   CASE NO.: 1:22-cv-00294-MHH-JHE

                                    :

          v.                          :

                                    :

WARDEN, FCI TALLADEGA,            :

          Respondent.             :

## DECLARATION OF SUSAN GIDDINGS

I, SUSAN GIDDINGS, hereby declare and state the following:

1.  I am an employee of the United States Department of Justice, Federal Bureau of

Prisons ("BOP").  Specifically, I am Chief of the Unit Management Section of the

Correctional Programs Branch ("CPB"), which is organized under the Correctional

Programs Division ("CPD") in the BOP's Central Office located in Washington, D.C.

I have worked for the BOP since February 1991 and have been the Unit Management

Section Chief since December 2019.

2.  As the Unit Management Section Chief, I am responsible for overseeing Correctional

Systems and the BOP's national Victim and Witness Program.  Additionally, I have

been intimately involved in the development and implementation of the BOP's FSA

procedures.  As such, I work closely with the Office of Research and Evaluation

("ORE") and the Office of Information Technology ("OIT").  As part of my duties,

I also have access to BOP files maintained in the ordinary course of business related to inmates incarcerated within the BOP, including the SENTRY database.[1]

3. Petitioner, Robert S. Stewart Jr., federal register number 28576-509, is an inmate currently incarcerated on home confinement. Petitioner alleges that the BOP improperly calculated his First Step Act ("FSA") time credits.

4. Upon the request of BOP legal staff, I have reviewed the BOP's calculation of Petitioner's FSA time credits. For reasons that are not apparent to me, Petitioner's FSA time credits were in fact incorrectly calculated at the time he filed his petition. I have attached Attachment 1, a copy of the original FSA calculation indicating 61 days of FSA credit, and Attachment 2 that includes the updated FSA calculation indicating Petitioner is receiving 75 days of FSA credit. As reflected below in Attachment 2, Petitioner's FSA time credits are now properly calculated at 75 days. ORE reviewed Petitioner's records and manually calculated his FSA time credits. I personally reviewed ORE's calculation and conducted my own independent calculation. I concur with ORE's calculation of 75 days.

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

5. A true and correct copy of Petitioner's complete sentence computation data as it existed at the time that he filed the petition titled "SENTENCE MONITORING COMPUTATION DATA" is attached to this declaration as Attachment 1. This report was generated on April 12, 2022, and shows the following:

   a. On June 16, 2021, the United States District Court in the Eastern District of Virginia sentenced Petitioner to a sentence of 21 months of imprisonment and three years of supervised release in case numbers 1:21CR00005-001 for violating 18 U.S.C. 1001(A)(2), 1343, & 641 for false statements, wire fraud, and theft of government funds. Attachment 1, p. 2.

   b. On July 28, 2021, Petitioner voluntarily surrendered to the Federal Correctional Institution in Talladega, Alabama, ("FCI Talladega") to commence his federal sentence. Petitioner's full term release date is April 7, 2023. Attachment 1, p. 1, & 2.

   c. Petitioner's FSA eligibility status reflects "eligible," meaning he is eligible to apply earned time FSA credits towards his statutory release date. Attachment 1, p. 1.

    d. Petitioner's final statutory release date via good conduct time release reflects January 3, 2023. This date is what was formerly referred to as a good conduct time release date. It is calculated by subtracting any earned and projected good conduct time from his full-term release date. In this case, Petitioner's earned and projected good conduct time is 94 days, and his full-term release date is April 7, 2023. His statutory release date is January 3, 2023, because it is 94 days less than his full-term release date. This date does not include his FSA credits. Attachment 1, p. 1.

    e. The report generated on April 12, 2022, shows Petitioner's FSA credits reflects 61 days. Attachment 1, p. 1.

    f. Petitioner's projected release date via FSA reflects November 3, 2022, which is 61 days less than his statutory release date, January 3, 2023. However, as explained below the FSA credits were calculated incorrectly. Attachment 1 p. 1.

6. BOP recently did a recalculation of Petitioner's FSA credits. A true and correct copy of Petitioner's complete sentence computation data titled "SENTENCE MONITORING COMPUTATION DATA" is attached to this declaration as

Attachment 2.  This report was generated on April 27, 2022 and shows the two

changes to Attachment 1, generated on April 12, 2022:

    a.  Petitioner's FSA credits reflects 75 days.[2] Attachment 2, p. 1.

    b.  Petitioner's projected FSA release date reflects October 20, 2022, which is 75

        days before his statutory release date via good conduct time release of January

        3, 2023. Attachment 2, p. 1.

7.  On January 13, 2022, the Department of Justice announced that BOP had finalized

    the FSA time credit rule and transmitted it to the Federal Register for publication.

    The final rule was published on January 19, 2022.  This final rule explains BOP

    procedures regarding implementation of the specific provisions, including those

    related to the earning and application of FSA time credits.

8.  The BOP has already begun implementing the FSA final rule and will continue to do

    so on a rolling basis.  BOP has already begun applying FSA time credits.  As of

    January 31, 2022, thousands of inmates have already been released to community

    custody, with hundreds more expected to be released to community supervision

---

[2] This reflects an additional 14 days of FSA credit from the initial calculation in Attachment 1.

within 30 days.  It is anticipated that in the months to come, thousands more will be eligible for release.

9. On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule.  Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement.  These interim procedures will remain in effect during this initial period and will continue pending the completion of an auto-calculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT).

10. During the initial period and beyond, BOP's focus and attention is on ensuring the accurate calculation and application of FSA time credits.

11. For purposes of FSA time credit calculations, BOP is in the process of creating and implementing an application to fully automate calculations so that ORE will no longer have to manually calculate time credits for each inmate.  BOP expects to "go live" with this application in the coming months.

12. In the meantime, the BOP decided to set certain cutoff dates for manual FSA time credit calculations to ease the burden on staff.  Once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system.  In other words, until the automated system is implemented, Petitioner's calculation will remain at 75 days despite his eligibility to earn additional days each month.

13. Under the interim procedures, the BOP is calculating credit based on the total number of days in the inmate's designated facility, divided by 30 days (one-month average), and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels which is applicable to Petitioner).

14. The BOP uses the date in which an inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, whichever is later, as the start date for calculation purposes.  Batch data is available monthly and is extracted on the last Saturday of the last full week of the month.  Beginning on December 25, 2021, monthly data sets of inmates, who are within 24 months of their statutory release data, were extracted and time credits were calculated.

15. Due to his impending statutory release date on January 3, 2023, the BOP grouped Petitioner in the initial batch of calculations with a cutoff date of December 25, 2021. The start date for Petitioner's FSA calculations is July 28, 2021, the date he arrived at his designated institution. He remained at his designated institution, and in good standing between July 28, 2021, and December 25, 2021. Thus, he had a total of 150 days of eligible time. Using the interim procedures, the FSA calculation was done as follows: 150 days, divided by 30 days, times 15 days = 75 days. Accordingly, Petitioner earned 75 days of FSA credit for the time he served between July 28, 2021, and December 25, 2021.

16. To date, ORE has not recalculated Petitioner's time credits to reflect credit for the past four months (January – April) despite his eligibility to earn time credits. Like many other similarly situated BOP inmates, Petitioner's FSA time calculations are governed by the interim guidance. At this time, the BOP does not intend to recalculate FSA time credits for inmates that have already been reviewed, until implementation of the automated system. As stated above, once the automated system is up and running Petitioner's FSA credits will be updated to include any

additional FSA credit that he is entitled to, that have not already been included in this initial calculation.

17. My understanding is that OIT is working diligently to implement the automated system. Although it is unclear when exactly the system will go live, my understanding is that OIT is in the final stages of software testing and could potentially go live within the next 90 days barring any unforeseen circumstances.

18. The BOP does not calculate time credits based on future projected days. Credit is earned as it accumulates. This is because an inmate does not earn time credit for days in custody if they refuse to participate in certain programs or are placed in the Special Housing Unit. It is entirely possible Petitioner may not earn time credits in the future.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of April, 2022.

SUSAN GIDDINGS
Unit Management Section, Chief
Correctional Programs Branch
Federal Bureau of Prisons